United States Court of Appeals
For the Eighth Circuit

_____

No. 21-2875
_____

Dylan Brandt, by and through his mother Joanna Brandt; Joanna Brandt; Sabrina Jennen, by and through her parents Lacey and Aaron Jennen; Lacey Jennen; Aaron Jennen; Brooke Dennis, by and through her parents Amanda and Shayne Dennis; Amanda Dennis; Shayne Dennis; Parker Saxton, by and through his father Donnie Saxton; Donnie Saxton; Michele Hutchison, on behalf of herself and parents; Kathryn Stambough, on behalf of herself and her parents

*Plaintiffs - Appellees*

v.

Leslie Rutledge, in her official capacity as the Arkansas Attorney General; Amy E. Embry, in her official capacity as the Executive Director of the Arkansas State Medical Board; Sylvia D. Simon, in official capacity as member of the Arkansas State Medical Board; Robert Breving, Jr., in official capacity as member of the Arkansas State Medical Board; John H. Scribner, in official capacity as member of the Arkansas State Medical Board; Elizabeth Anderson, in official capacity as member of the Arkansas State Medical Board; Rhys L. Branman, in official capacity as member of the Arkansas State Medical Board; Edward Gardner, "Ward"; in official capacity as member of the Arkansas State Medical Board; Rodney Griffin, in official capacity as member of the Arkansas State Medical Board; Betty Guhman, in official capacity as member of the Arkansas State Medical Board; Brian T. Hyatt, in official capacity as member of the Arkansas State Medical Board; Timothy C. Paden, in official capacity as member of the Arkansas State Medical Board; Don R. Philips, in official capacity as member of the Arkansas State Medical Board; William L. Rutledge, in official capacity as member of the Arkansas State Medical Board; David L. Staggs, in official capacity as member of the Arkansas State Medical Board; Veryl D. Hodges, in official capacity as member of the Arkansas State Medical Board

*Defendants - Appellants*

------------------------------

Keira Bell; Laura Becker; Sinead Watson; Kathy Grace Duncan; Laura Reynolds; Carol Freitas; Yaacov Sheinfeld; Jeanne Crowley; Ted Hudacko; Lauren W.; Martha S.; Kellie C.; Kristine W.; Bri Miller; Helen S.; Barbara F.; State of Alabama; State of Alaska; State of Arizona; State of Georgia; State of Idaho; State of Indiana; State of Kansas; State of Kentucky; State of Louisiana; State of Mississippi; State of Missouri; State of Montana; State of Nebraska; State of South Carolina; State of South Dakota; State of Tennessee; State of Texas; State of Utah; State of West Virginia; Family Research Council; Women's Liberation Front; Quentin L. Van Meter, MD; Michael K. Laidlaw, MD; Andre Van Mol, MD; Jeffrey E. Hansen, Ph. D.

*Amici on Behalf of Appellant(s)*

Lambda Legal Defense and Education Fund; National Women's Law Center; Equality South Dakota; Family Equality; Freedom for All Americans; Gender Justice; GLBTQ Legal Advocates & Defenders; Human Rights Campaign; Intransitive (Mabelvale, Arkansas); Legal Voice; Lucie's Place (Little Rock, Arkansas); National Center for Lesbian Rights; National Center for Transgender Equality; National LGBTQ Task Force; One Iowa; OutNebraska; PFLAG; SisterReach; South Dakota Transformation Project; Southwest Women's Law Center; Transformation Project Advocacy Network; Women's Law Project; American Academy of Pediatrics; Academic Pediatric Association; American Academy of Child and Adolescent Psychiatry; American Association of Physicians for Human Rights, Inc.; American College of Osteopathic Pediatricians; American Medical Association; American Pediatric Society; American Psychiatric Association; Arkansas Chapter of the American Academy of Pediatrics; Arkansas Council on Child and Adolescent Psychiatry; Arkansas Medical Society; Arkansas Psychiatric Society; Association of Medical School Pediatric Department Chairs; Endocrine Society; National Association of Pediatric Nurse Practitioners; Pediatric Endocrine Society; Society for Adolescent Health and Medicine; Society for Pediatric Research; Society of Pediatric Nurses; Societies for Pediatric Urology; World Professional Association for Transgender Health; Biomedical Ethics and Public Health Scholars; United States; LiveRamp Holdings, Inc.; Acxiom LLC; Kinesso, LLC; The Walton Family Foundation, Inc.; Arkansas State Chamber of Commerce; Northwest Arkansas Council; Asana, Inc.; Xperi Holding Corp.; Interpublic Group of Companies, Inc.; Winthrop Rockefeller Foundation; Acoustic, L.P.; CYCLQ LLC, doing business as Blue Star Business Services; Institute for Justice; State of California; State of Colorado; State of Connecticut;

State of Delaware; State of Hawaii; State of Illinois; State of Maine; State of Maryland; State of Massachusetts; State of Michigan; State of Minnesota; State of Nevada; State of New Jersey; State of New Mexico; State of New York; State of North Carolina; State of Oregon; State of Rhode Island; State of Vermont; State of Washington; District of Columbia; Stonewall UK; Swedish Federation for Lesbian, Gay, Bisexual, Transgender, Queer and Intersex Rights; Australian Professional Association for Trans Health; Professional Association for Transgender Health Aotearoa New Zealand; LGBT+ Denmark; Bundesverband Trans e.V.; Federacion Estatal de Lesbianas, Gais, Trans, Bisexuales, Intersexuales y mas; Fundacion Colectivo Hombres XX, AC; Norwegian Organization for Sexual and Gender Diversity; The Trevor Project, Inc.; Elliot Page and 57 Other Individuals; Families with Transgender Children

*Amici on Behalf of Appellee(s)*

––––––––––––

Appeal from United States District Court
for the Eastern District of Arkansas - Central

––––––––––––

Submitted: June 15, 2022
Filed: August 25, 2022

––––––––––––

Before LOKEN and KELLY, Circuit Judges, and MENENDEZ, District Judge.[1]

––––––––––––

KELLY, Circuit Judge.

Arkansas state officials (collectively, Arkansas or the State) appeal the order of the district court[2] preliminarily enjoining Act 626 of the 93rd General Assembly

---

[1] The Honorable Katherine M. Menendez, United States District Judge for the District of Minnesota, sitting by designation.

[2] The Honorable James M. Moody, Jr., United States District Judge for the Eastern District of Arkansas.

of Arkansas.  This court has jurisdiction under 28 U.S.C. § 1292(a)(1) to review an interlocutory order granting a preliminary injunction, and we affirm.

## I. Background

On April 6, 2021, the Arkansas state legislature overrode the governor's veto and enacted Act 626.  The Act prohibits a healthcare professional from "provid[ing] gender transition procedures to any individual under eighteen (18) years of age" or "refer[ring] any individual under eighteen (18) years of age to any healthcare professional for gender transition procedures."  Ark. Code Ann. § 20-9-1502(a), (b).  "Gender transition procedures" is defined to include "any medical or surgical service, including without limitation physician's services, inpatient and outpatient hospital services, or prescribed drugs" that are intended to "[a]lter or remove physical or anatomical characteristics or features that are typical for the individual's biological sex" or "[i]nstill or create physiological or anatomical characteristics that resemble a sex different from the individual's biological sex."  Id. § 20-9-1501(6)(A).  Specifically identified services include "puberty-blocking drugs, cross-sex hormones, or other mechanisms to promote the development of feminizing or masculinizing features in the opposite biological sex, or genital or nongenital gender reassignment surgery performed for the purpose of assisting an individual with a gender transition."  Id.  "Gender transition procedures" specifically does not include "[s]ervices to persons born with a medically verifiable disorder of sex development."  Id. § 20-9-1501(6)(B).

Act 626 was set to take effect on July 28, 2021.  In May, Plaintiffs in this matter—transgender youth (Minor Plaintiffs), their parents (Parent Plaintiffs), and two healthcare professionals (Physician Plaintiffs)—filed a complaint seeking declaratory and injunctive relief.  Plaintiffs allege that Act 626 violates the Equal Protection Clause of the Fourteenth Amendment because it discriminates against Minor Plaintiffs and Physician Plaintiffs' minor patients on the basis of sex and transgender status.  Parent Plaintiffs further allege the Act violates the Due Process Clause of the Fourteenth Amendment by limiting their fundamental right to seek and

-4-

follow medical advice for their children. Finally, Plaintiffs allege that, by banning referrals, Act 626 violates their First Amendment rights by limiting what Physician Plaintiffs can say and what Minor and Parent Plaintiffs can hear.

In June, Plaintiffs moved for a preliminary injunction to stop Act 626 from going into effect. Arkansas moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). After a hearing on the motions, the district court denied the motion to dismiss and granted the motion for preliminary injunction, concluding that Plaintiffs had standing and showed a likelihood of success on the merits of each of their claims and a likelihood of irreparable harm. Arkansas appeals.

## II. Standing

As an initial matter, the State challenges Plaintiffs' standing to seek an injunction of specific aspects of the Act. Constitutional standing requires that at least one plaintiff demonstrate they have suffered a concrete and particularized injury that is fairly traceable to the challenged action and is likely to be redressed by a court ruling in the plaintiff's favor. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992). Arkansas argues that because no Minor Plaintiff has declared an intent to undergo gender-reassignment surgery as a minor, no Plaintiff has established standing to challenge the ban as to that type of gender transition procedure. The State also argues that Plaintiffs lack standing to challenge the section of the statute that provides for private enforcement because no defendant is involved in enforcement of the Act by private right of action. But Arkansas does not contest that Plaintiffs have met their burden under Lujan to challenge other parts of the Act, and this court declines the State's invitation to modify well-established constitutional standing principles to require that a plaintiff demonstrate an injury

-5-

Appellate Case: 21-2875    Page: 5    Date Filed: 08/25/2022 Entry ID: 5191161

traceable to every possible application of the challenged statute in order to satisfy the constitutional standing requirement.[3]

## III. Preliminary Injunction

### A. Legal Standard

"In reviewing the issuance of a preliminary injunction, we consider the threat of irreparable harm to the movant, the likelihood that the movant will succeed on the merits, the balance between the harm to the movant and injury that an injunction would inflict on other parties, and the public interest." Brakebill v. Jaeger, 932 F.3d 671, 676 (8th Cir. 2019) (citing Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc)). A party challenging a state statute must show that she is likely to prevail on the merits. See Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 730 (8th Cir. 2008). "The plaintiff[s] need only establish a likelihood of succeeding on the merits of any one of [their] claims." Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs, 826 F.3d 1030, 1040 (8th Cir. 2016) (quotation omitted).

We review the decision to grant a preliminary injunction for abuse of discretion. See Rodgers v. Bryant, 942 F.3d 451, 456 (8th Cir. 2019). "An abuse of discretion occurs where the district court rests its conclusion on clearly erroneous factual findings or erroneous legal conclusions." Rounds, 530 F.3d at 733 (quotation omitted). "If a factual finding is supported by substantial evidence on the record, it is not clearly erroneous." Dixon v. Crete Med. Clinic, P.C., 498 F.3d 837, 847 (8th Cir. 2007). "Clear error exists when despite evidence supporting the finding, the evidence as a whole leaves us with a definite and firm conviction that the finding is a mistake." Richland/Wilkin, 826 F.3d at 1036 (quotation omitted).

---

[3]The State also argues that Physician Plaintiffs lack third-party standing to sue on behalf of their minor patients. But since there is at least one plaintiff with standing to bring each of Plaintiffs' claims, we need not address this argument at this juncture.

## B. Likelihood of Success on the Merits

To evaluate Plaintiffs' likelihood of success on the merits of their equal protection claim, we must first determine the appropriate level of scrutiny. Cf. Libertarian Party of Ark. v. Thurston, 962 F.3d 390, 399 (8th Cir. 2020) (determining as a threshold matter what level of scrutiny applied to the challenged statute governing ballot access). Act 626 prohibits "gender transition procedures," which are defined as procedures or medications that are intended to change "the individual's biological sex." Ark. Code Ann. § 20-9-1501(6)(A). The statute defines "biological sex" as the person's sex "at birth, without regard to an individual's psychological, chosen, or subjective experience of gender." Id. § 20-9-1501(1). Thus, under the Act, medical procedures that are permitted for a minor of one sex are prohibited for a minor of another sex. A minor born as a male may be prescribed testosterone or have breast tissue surgically removed, for example, but a minor born as a female is not permitted to seek the same medical treatment. Because the minor's sex at birth determines whether or not the minor can receive certain types of medical care under the law, Act 626 discriminates on the basis of sex.

Arkansas's characterization of the Act as creating a distinction on the basis of medical procedure rather than sex is unpersuasive. Arkansas argues that administering testosterone to a male should be considered a different procedure than administering it to a female because the "procedure allows a boy to develop normally" whereas for a girl it has the effect of "disrupting normal development." But this conflates the classifications drawn by the law with the state's justification for it. The biological sex of the minor patient is the basis on which the law distinguishes between those who may receive certain types of medical care and those who may not. The Act is therefore subject to heightened scrutiny. See Heckler v. Mathews, 465 U.S. 728, 744 (1984). Cf. Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ., 858 F.3d 1034, 1051 (7th Cir. 2017) (holding that where "the School District's policy cannot be stated without referencing sex, as the School District decides which bathroom a student may use based upon the sex listed on the student's birth certificate," the policy "is inherently based upon a sex-

Appellate Case: 21-2875     Page: 7     Date Filed: 08/25/2022 Entry ID: 5191161

classification and heightened review applies") (abrogation on other grounds recognized by Ill. Republican Party v. Pritzker, 973 F.3d 760 (7th Cir. 2020)).[4]

Statutes that discriminate based on sex must be supported by an "exceedingly persuasive justification." United States v. Virginia, 518 U.S. 515, 531 (1996). The government meets this burden if it can show that the statute is substantially related to a sufficiently important government interest. Id. at 533. Arkansas relies on its interest in protecting children from experimental medical treatment and regulating ethics in the medical profession to justify Act 626.

The district court found that the Act prohibits medical treatment that conforms with "the recognized standard of care for adolescent gender dysphoria," that such treatment "is supported by medical evidence that has been subject to rigorous study," and that the purpose of the Act is "not to ban a treatment [but] to ban an outcome that the State deems undesirable." The record at this stage provides substantial evidence to support these factual findings.

Arkansas complains the district court failed to consider the medical evidence it submitted. Both parties provided scientific literature and declarations from medical experts and discussed the expert opinions in their briefs and at the motion hearing. The district court acknowledged at the hearing that "experts [on both] sides of this case don't agree, and I get that. That's part of the deal." We find no clear error in the district court's weighing of the competing evidence. See Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc., 336 F.3d 801, 803 (8th Cir. 2003) ("Our deferential review [of preliminary injunctions] arises from the district court's institutional advantages in evaluating witness credibility and weighing evidence.").

---

[4]The district court also concluded that heightened scrutiny was appropriate because the Act facially discriminates against transgender people, who constitute a quasi-suspect class. We discern no clear error in the district court's factual findings underlying this legal conclusion, but we need not rely on it to apply heightened scrutiny because the Act also discriminates on the basis of sex.

Appellate Case: 21-2875    Page: 8    Date Filed: 08/25/2022 Entry ID: 5191161

Furthermore, substantial evidence in the record supports the district court's factual findings, despite the contrary assertions of the State's experts. For example, while Arkansas's experts criticize the structure and scale of research on hormone therapies for adolescents with gender dysphoria, study design is only one factor among many that medical professionals properly consider when they review research and determine what course of action to recommend to a patient. And there is evidence in the record that these hormone treatments have been evaluated in the same manner as many other medical innovations. According to surveys of the research on hormone treatment for adolescents done by the British National Institute for Health & Care Excellence, several studies have shown statistically significant positive effects of hormone treatment on the mental health, suicidality, and quality of life of adolescents with gender dysphoria. None has shown negative effects.

Additionally, there is substantial evidence to support the district court's conclusion that the Act prohibits medical treatment that conforms with the recognized standard of care. Even international bodies that consider hormone treatment for adolescents to be "experimental" have not banned the care covered by Act 626. For example, Arkansas submitted to the district court a report from the Council for Choices in Health Care in Finland in which the council concluded that "[i]n light of available evidence, gender reassignment of minors is an experimental practice," but the report still recommends that gender-affirming care be available to minors under appropriate circumstances. In fact, the Finnish council's recommendations for treatment closely mirror the standards of care laid out by the World Professional Association for Transgender Health (WPATH) and the Endocrine Society, two organizations the State repeatedly criticizes. Like WPATH, the Finnish council concluded that puberty-suppressing hormones might be appropriate for adolescents at the onset of puberty who have exhibited persistent gender nonconformity and who are already addressing any coexisting psychological issues. Similarly, the WPATH Standards of Care and the Finnish council both recommend that cross-sex hormones be considered only where the adolescent is

experiencing persistent gender dysphoria, other mental health conditions are well-managed, and the minor is able to meet the standards to consent to the treatment.[5]

In sum, having reviewed the evidence as a whole, we are not left with the "definite and firm conviction" that the district court's factual findings are clearly erroneous. Rather, substantial evidence in the record supports its factual findings. In light of those findings, the district court did not err in concluding Act 626 is not substantially related to Arkansas's interests in protecting children from experimental medical treatment and regulating medical ethics, and Plaintiffs have demonstrated a likelihood of success on the merits of their equal protection claim.

C. Balance of the Equities

In considering the risk of irreparable harm to the Plaintiffs, the district court found that if Act 626 went into effect, Minor Plaintiffs would be denied access to hormone treatment (including needing to stop treatment already underway), undergo endogenous puberty—a process that cannot be reversed—and suffer heightened gender dysphoria. These factual findings are supported by Minor Plaintiffs' affidavits and are not clearly erroneous. The findings support the conclusion that Plaintiffs will suffer irreparable harm absent a preliminary injunction.

Additionally, it is "always in the public interest to prevent the violation of a party's constitutional rights." Bao Xiong ex rel. D.M. v. Minn. State High Sch. League, 917 F.3d 994, 1004 (8th Cir. 2019) (quoting Awad v. Ziriax, 670 F.3d 1111,

---

[5]The State also emphasized the judicial decision in Bell v. Tavistock & Portman NHS Foundation Trust, 2020 EWHC (Admin) 3274, in the United Kingdom, in which the court decided that minors under 16 years old could not consent to receive hormone therapies and required court approval because it is "a very unusual treatment" with "limited evidence as to its efficacy." Id. at ¶ 134. That judgment has since been reversed, however, with the court of appeals concluding that "[n]othing about the nature or implications of the treatment with puberty blockers allows for a real distinction to be made" from other medical treatment an adolescent might seek. 2021 EWCA (Civ) 1363, at ¶ 76.

1132 (10th Cir. 2012)). These interests, weighed against the potential harm to Arkansas of not enforcing Act 626 between now and a final ruling on the merits of the litigation, convince us that the district court did not abuse its discretion in granting Plaintiffs' motion for preliminary injunction.

### D. Scope of the Injunction

Arkansas's final argument is that the district court abused its discretion by granting a facial injunction. It is true, as the State points out, that some minors experiencing gender dysphoria may choose not to pursue the gender transition procedures covered by the Act and therefore would not be harmed by its enforcement. A party bringing a facial challenge must "establish that no set of circumstances exists under which the Act would be valid," United States v. Salerno, 481 U.S. 739, 745 (1987), but the State describes minors for whom the Act simply would have no application, see City of Los Angeles v. Patel, 576 U.S. 409, 418–19 (2015) ("The proper focus of the [facial] constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant." (quotation omitted)). Moreover, Arkansas has failed to offer a more narrowly tailored injunction that would remedy Plaintiffs' injuries. The district court did not abuse its discretion by granting a facial injunction.

### IV. Conclusion

Because we conclude the district court did not abuse its discretion in granting a preliminary injunction based on Plaintiffs' equal protection claim, we need not address the State's challenges to Plaintiffs' other claims. The decision of the district court is affirmed.

_____